UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **ARTHUR MAE NELSON** | * | **CIVIL ACTION NO. 10-1218** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

On June 18, 2008, Arthur Mae Nelson filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments. (Tr. 88-93). She alleged disability as of January 29, 2008, because of carpal tunnel syndrome and torn ligaments in her right foot. (Tr. 99). The applications were denied at the initial stage of the administrative process. (Tr. 47-57). Thereafter, Nelson requested and received a December 10, 2008, hearing before an Administrative Law Judge ("ALJ"). (Tr. 21-46). However, in a December 21, 2009, written decision, the ALJ determined that Nelson was not disabled under the Act, finding at Step Five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 6-16). Nelson appealed the adverse

decision to the Appeals Council. On June 23, 2010, however, the Appeals Council denied Nelson's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On July 20, 2010, Nelson sought review before this court.[1] She alleges the following errors,

(1) the ALJ's residual functional capacity assessment is not supported by substantial evidence;

(2) the ALJ erred when he declined to fully credit plaintiff's subjective complaints and testimony; and

(3) the ALJ erred when he determined that plaintiff was able to make an adjustment to work that exists in substantial numbers in the national economy at Step Five of the sequential evaluation process.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a

---

[1] Tragically, Arthur Nelson passed away on February 22, 2011. (Affidavit of Kashonda Williams, M/Substitute, Exh.). On May 16, 2011, her surviving children, Cedric W. Nelson and Marcus A. Nelson were substituted as plaintiffs. (May 16, 2011, Order).

preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite

       duration will not be found disabled.

(3)   An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)   If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

      The ALJ determined at Step One of the sequential evaluation process that Nelson had not engaged in substantial gainful activity during the relevant period. (Tr. 11). At Step Two, he found that Nelson suffers severe impairments of carpal tunnel syndrome and S/P right foot tendon transfer. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 12).

In his Step Two assessment, the ALJ determined that although plaintiff also suffered from medically determinable impairments of depression and anxiety, they did not constitute severe impairments. (Tr. 11-12). In so deciding, the ALJ incorporated the pertinent findings and conclusions of the psychiatric review technique form completed by non-examining agency psychologist, Jack Spurrier, Ed.D., on August 26, 2008. (Tr. 253-266). Spurrier reviewed plaintiff's allegations and the medical record, but opined that Nelson's anxiety and depression imposed no more than mild limitations, and thus, were non-severe. *Id*.

In his decision, the ALJ discussed plaintiff's hearing testimony that she suffered from panic attacks, but discounted her allegations as not supported by the objective medical record. (Tr. 12). He also noted that plaintiff's treating physician had diagnosed depression and prescribed Effexor. *Id*. However, the record remained devoid of treatment records from a mental health professional. *Id*. Moreover, the consultative physician checked plaintiff for signs of depression, but imposed no resulting limitations. (Tr. 239-242).

The court further observes that according to plaintiff, medication helps relieve her symptoms, and that she did not experience any resulting side effects. (Tr. 32-33).[2] Moreover, although plaintiff testified that she suffers from panic attacks and purportedly was treated for depression prior to her alleged disability onset date of January 2008,[3] she did not identify depression or panic attacks as a disabling impairment when she completed her disability questionnaire(s). *See* Tr. 99. Moreover, as recently as September 26, 2008, plaintiff confirmed no changes to the severity of her impairments on disability forms that she completed on June 30,

---

[2] Plaintiff stated that her doctor provided her with free samples because she no longer had insurance. (Tr. 32).

[3] *See e.g.*, Tr. 193.

5

2008, and, on which she represented that she was able to: finish what she started; follow spoken and written instructions well; and **handle stress and changes in her routine very well**. (Tr. 112-114, 129) (emphasis added). She also did not note any unusual behavior or fears. These inconsistencies by plaintiff provide further support for the ALJ's decision to discount the severity of her alleged mental impairments. They also further support the ALJ's credibility determination. *See* discussion, *infra*.

## II.    Residual Functional Capacity

The ALJ next determined that Nelson retained the residual functional capacity to perform medium work, except that she could only frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; frequently balance, stoop, kneel, crouch, or crawl; and only occasionally finger with her right hand. (Tr. 13).[4]

---

[4] Medium work is defined and explained by Social Security Ruling 83-10:
> [t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward). However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi

The ALJ grounded his residual functional capacity assessment upon the consultative physical examination administered by Clint Wilson, M.D., the treatment records of James Lillich, M.D., and the physical residual functional capacity assessment form completed by non-examining agency physician, Gerald Dzurik, M.D. (Tr. 243-250). Plaintiff contends that the ALJ failed to consider and credit all of the pertinent medical evidence.

a) Relevant Medical Evidence

On February 21, 2006, plaintiff's treating physician, Sree Praggada, M.D., diagnosed her as suffering from anxiety/depression. (Tr. 193). Treatment notes from April 2006, indicate that plaintiff complained of left hand numbness and tingling. (Tr. 192). Dr. Praggada noted at that time, that Nelson previously had undergone surgery for right hand Carpal Tunnel Syndrome ("CTS"). (Tr. 192).

An April 5, 2006, EMG/Nerve Conduction Study indicated moderate to severe left median neuropathy across the wrist (CTS). (Tr. 223-224). A Nerve Conduction Study on the right side was found to be within normal limits. *Id*.

On September 14, 2006, Nelson was seen by Michelle Ritter, M.D., at the Center for Hand Surgery, Inc., for a follow-up visit. (Tr. 219-220). Ritter noted that Nelson was right hand dominant. *Id*. She diagnosed CTS of the left hand and trigger thumb. *Id*. Ritter instructed Nelson to call the office and schedule a return visit if the symptoms persisted. *Id*. She cleared her to return to work that evening. *Id*. There is no record that Nelson sought further treatment

---

driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

from Dr. Ritter.

On June 4, 2007, plaintiff was seen by James Lillich, M.D. for pain in her right ankle. (Tr. 234).

Dr. Praggada's treatment notes dated January 11, 2008, indicate that plaintiff continued to suffer from persistent pain in her right ankle. (Tr. 173).

On February 22, 2008, Dr. Lillich performed a right ankle, arthroscopic debridement and synovectomy. (Tr. 165-167). He instructed plaintiff to remain off of work from February 4, 2008, until eight to ten weeks after surgery. (Tr. 233).

In the aftermath of her right ankle surgery, plaintiff participated in physical therapy. On May 8, 2008, she reported to her physical therapist that her ankle hurt constantly. (Tr. 236). She exhibited a reduced range of motion in the right ankle. *Id*.

By June 2008, plaintiff was still experiencing pain in her ankle, but her swelling had almost resolved. (Tr. 226). Accordingly, Dr. Lillich cleared her to return to full duty work, with no restrictions. *Id*.

On August 2, 2008, plaintiff underwent a consultative physical examination administered by Clint Wilson, M.D., at the request of Disability Determination Services. (Tr. 239-242). At the examination, plaintiff complained of carpal tunnel syndrome, torn ligaments in her right foot, and depression. *Id*. She denied chest pain, dyspnea, shortness of breath at rest, etc. *Id*. Upon examination, she exhibited no muscle asymmetry, atrophy or involuntary movements. *Id*. Her right medial ankle was swollen without tenderness, soft, with a decreased range of motion. *Id*. Nonetheless, she had a normal gait, and was able to bend and squat without difficulty. *Id*. Her left hand demonstrated 5/5 strength, with adequate fine motor movements, dexterity and ability to grasp objects. *Id*. Her right hand had 3/5 strength with palpable nodules consistent with

trigger fingers in digits 2-5 of the right hand. *Id*. Phalen and Tinels tests were negative. *Id*. She did not appear to be depressed or anxious. *Id*. Her recent and remote memory remained intact. *Id*. She had good insight and cognitive function. *Id*. Wilson diagnosed Trigger finger: right hand digits 2, 3, 4, 5 (sparing only the thumb) and S/P right foot tendon transfer. *Id*. Wilson opined that plaintiff could sit, walk, and/or stand for a full work day; lift/carry objects without limitations, hold a conversation, respond appropriately to questions, and carry out and remember instructions. *Id*.

Upon review of the medical record, including the physical examination administered by the consultative physician, non-examining agency physician, Gerald Dzurik, M.D., completed a physical residual functional capacity assessment form on August 26, 2008. (Tr. 243-250). He indicated that Nelson could occasionally lift 50 pounds, frequently lift 25 pounds, and stand, walk, and/or sit for about six hours in an eight hour day. *Id*. However, she could only occasionally climb ladders/rope/and scaffolds. *Id*. Her ability to finger was limited to occasional on the right side only. *Id*. Dzurik assigned no other limitations. *Id*.

b) Discussion

Plaintiff contends that the record does not support the ALJ's residual functional capacity assessment. As set forth above, however, the ALJ's residual functional capacity assessment carefully tracks the opinion of the non-examining agency physician who premised his assessment upon the findings of the consultative examiner, plaintiff's allegations, and the medical record. No other physician of record, including plaintiff's treating physician(s), has imposed any limitation of function that is inconsistent with the ALJ's findings, during the relative period.

Indeed, with regard to plaintiff's right ankle surgery, the record indicates that her surgeon released her to work, without limitations, some four months after the surgery. Moreover,

although plaintiff points to some treatment records indicating that she suffered from carpal tunnel syndrome, the records were from 2006 – well over one year before the alleged disability onset date. In fact, the most recent medical records stem from the consultative physical examination which, in turn, provided the foundation for the non-examining physician's opinion, and ultimately, the ALJ's residual functional capacity assessment. Furthermore, plaintiff conceded at the hearing that, but for the panic attacks (which are controlled by medication, *see* discussion, *supra*), she could "do" the machine operator or inspector jobs. *See* Tr. 44-45.

Plaintiff further argues that the ALJ failed to properly evaluate her subjective complaints and credibility. When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in his credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Moreover, the ALJ is entitled to find that the medical evidence is more persuasive than the claimant's own testimony. *Falco, supra*.

In this case, the ALJ declined to credit plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms to the extent that they were inconsistent with his residual functional capacity assessment. (Tr. 13). In other words, the ALJ credited the limitations recognized by the consultative and agency physicians over Nelson's self-professed limitations. The ALJ's analysis satisfied the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3,

2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion); *see also* discussion, *supra* (discussing inconsistencies in plaintiff's own testimony).

### III.     Step Five

The ALJ concluded at Step Four of the sequential evaluation process that Nelson could not perform her past relevant work. (Tr. 14). Accordingly, he proceeded to Step Five. At this step, the ALJ determined that plaintiff was 55 years old as of the alleged disability onset date, and thus, an individual of advanced age under the regulations, with at least a high school education, and with transferrable skills. (Tr. 14). With the assistance of a vocational expert ("VE"), who provided responses to three sets of written interrogatories (Tr. 138-162),[5] the ALJ found that Nelson was capable of making an adjustment to perform other jobs that exist in significant numbers in the national economy.[6]

---

[5] Plaintiff's counsel seems to infer some ulterior motive behind the ALJ's decision to submit supplemental interrogatories to the VE. It is manifest, however, that the VE misapprehended the hypothetical contained in the initial set of interrogatories. *See* Tr. 140-143 (opining that the hypothetical claimant could perform no jobs at all, if she retained no use in her left hand at all). Moreover, as the ALJ explained in his cover letter to the third set of interrogatories, the VE failed to address three hypotheticals that were included in the second set of interrogatories. (Tr. 155).

[6] The VE identified approximately seven representative job categories at the medium exertional level, including *inter alia*, floor waxer, DOT Code 381.687-034 and hospital cleaner DOT Code 323.687-010. (Tr. 15, 158-159). In Louisiana, there are approximately 1,800 floor waxer positions and 2,600 hospital cleaner positions. (Tr. 15, 158). These jobs constitute a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

Plaintiff contends that the ALJ's Step Five determination is contrary to 20 C.F.R. § 416.968(d)(4) which discusses transferability of skills for persons of advanced age. By its own terms, however, § 416.968(d)(4) applies solely to claimants who are limited to light or sedentary work. 20 C.F.R. § 416.968(d)(4). Here, of course, the ALJ determined that Nelson retained the capacity for medium work.

Plaintiff protests that the hypothetical posed to the VE did not reference her diagnosis for carpal tunnel syndrome in her left hand. However, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994).[7] Here, the ALJ's hypothetical to the VE incorporated all of the limitations recognized in his residual functional capacity assessment, and that assessment is supported by substantial evidence. *See* discussion, *supra*.

Finally, plaintiff appears to take issue with the VE's opinion that if the hypothetical (that included her residual functional capacity assessment as ultimately adopted by the ALJ) precluded her from performing her past relevant work, then it also should preclude her from performing the jobs identified by the VE. However, the VE's opinion remains uncontested; there is no indication that it even conflicts with the Dictionary of Occupational Titles. Accordingly, the instant record reflects an adequate basis to support the ALJ's decision to defer to the expertise of the VE. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). Certainly, if plaintiff harbored any doubts concerning the VE's opinion, plaintiff was obliged to emphasize the alleged inconsistency

---

[7] The hypothetical question posed to the VE should incorporate the "concrete *consequences* of a claimant's deficiencies." *Taylor v. Chater,* 118 F.3d 1274, 1278 (8th Cir. 1997) (emphasis added). The VE is not a medical doctor; thus, diagnoses are meaningless. The VE needs concrete limitations of functioning, which is what the ALJ provided in this case.

12

and to press the issue upon cross-examination.[8] While an ALJ has a duty to make a sufficient inquiry into a claim, the claimant retains the burden to establish that he is unable to perform past relevant work. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990) (citations omitted).

## Conclusion

The ALJ in this case was tasked with determining whether plaintiff was disabled. In so doing, he considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was not uniform and could have supported a different outcome. However, the ALJ ultimately grounded his decision upon the opinions of the consultative and agency physicians. Such conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton, supra*.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Nelson was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

---

[8] "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey, supra*; *see also Barratt v. Astrue*, 2008 WL 2325636 (5th Cir. June 6, 2008) (unpubl.). The instant ALJ provided plaintiff's counsel with a copy of the VE's interrogatory responses, and advised him that he had the right to question the VE. (Tr. 163-164). There is no indication that plaintiff took advantage of this offer to question the VE regarding the consistency of her opinion(s).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 29th day of July 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE